UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY VAN DURMEN,

       Petitioner,

                                             Case No. 1:10-cv-157
v.                                             Hon. Robert J. Jonker

CAROL HOWES,

       Respondent.
_____/

**REPORT AND RECOMMENDATION**

       Petitioner, Anthony Van Durmen, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.       Background**

       On July 16, 1987, following a jury trial, petitioner was convicted of first-degree premeditated murder, M.C.L. § 750.316, first-degree felony-murder, M.C.L. § 750.316, and armed robbery, M.C.L. § 750.529. *People v. Van Durmen*, No. 282172, slip op. at p. 1 (Mich. App. July 14, 2009). Petitioner's convictions arose from the following facts:

> Emma McNulty and her husband Thomas McNulty lived in Niles, Michigan. Mrs. McNulty's adult child from a previous marriage owed defendant $120 for marijuana. After making prior threats to get his money one way or another, on December 23, 1986, defendant, accompanied by David Vail and Jeremy Sisk, broke into the McNulty's home. Mrs. McNulty was the only one home and David Vail testified that she was brutally attacked and killed by defendant. Defendant and his accomplices left the McNulty home stealing valuable coins and jewelry.

*Id.* Petitioner was sentenced to life imprisonment without parole for the murder charges and life imprisonment for the armed robbery charge. *Id.*

It took several years for petitioner's case to be filed with the Michigan Court of Appeals. This court previously summarized the delay as follows:

> On July 16, 1987, Petitioner was convicted of two counts of first degree murder and one count of armed robbery, for which he was sentenced to life in prison. Petitioner timely requested the appointment of appellate counsel and on October 9, 1987, James Jesse was appointed to represent Petitioner. On December 3, 1987, Jesse filed in the trial court motions seeking a new trial and re-sentencing. No action was taken on Petitioner's motions and Petitioner did not file an appeal in the Michigan Court of Appeals.
>
> In 1990, Terrence Flanagan, Deputy Administrator of the Michigan Appellate Assigned Counsel System (MAACS), began investigating complaints made by several of Mr. Jesse's clients. On August 15, 1991, MAACS issued a formal finding in support of the involuntary removal of Mr. Jesse from the appellate counsel roster for his mishandling of several matters, including Petitioner's appeal. Mr. Jesse did not contest this finding and he was removed from the MAACS roster on September 16, 1991. Mr. Flanagan then contacted Petitioner to inquire whether he wanted MAACS to appoint new counsel to represent him. Satisfied with Mr. Jesse's assurances that he would attend to his matter, Petitioner declined the offer of substitute counsel.
>
> Despite Mr. Jesse's failure to take any action on his behalf, Petitioner waited more than six years before taking any action. Petitioner eventually wrote to Mr. Flanagan requesting the appointment of substitute counsel. However, following assurances from Mr. Jesse that he would attend to his matter, Petitioner contacted Mr. Flanagan to withdraw his request for substitute counsel. Not surprisingly, Mr. Jesse again failed to take any action on Petitioner's behalf. On February 23, 1998, Petitioner again requested the appointment of substitute appellate counsel.
>
> On April 27, 1998, the State Appellate Defender's Office (SADO) was appointed to represent Petitioner on appeal. In 2001, SADO filed in the trial court a supplemental motion for new trial. SADO did not, however, file an appeal (or any other pleading) with the Michigan Court of Appeals. . .

*Van Durmen v. Jones*, No. 4:02-cv-184 ("*Van Durmen I*") (Report and Recommendation at pp. 1-2) (footnote omitted) (December 15, 2005) (docket no. 34).

On October 11, 2002, Van Durmen filed his first habeas petition in this court pursuant to 28 U.S.C. § 2254. *See Van Durmen I* (docket no.1). After reviewing the petition, the magistrate judge issued a report and recommendation concluding:

> In his petition, Van Durmen states that he is not seeking the invalidation of his conviction, but instead is asking the Court to resolve his claim "that the inordinate delay on appeal itself violates his constitutional rights." Respondent asserts that Van Durmen's petition must be dismissed for failure to exhaust administrative remedies. As discussed below, to the extent that Petitioner seeks the adjudication of any substantive claim implicating the validity of his conviction any such claim must be dismissed for failure to exhaust. To the extent that Petitioner seeks relief based on the alleged delay in resolving his appeal in the state courts, the Court concludes that Petitioner is not entitled to relief.

*Id.* (Report and Recommendation, Carmody, M.J., at p.3) (docket no. 34). The district judge adopted the Report and Recommendation to the extent that it recommended dismissal for failure to exhaust. *Id.* (Order on objections to magistrate judge's report and recommendation) (docket no. 37) (Feb. 10, 2006). However, the district judge determined that "because the petition must be dismissed for lack of exhaustion, the Magistrate Judge erred in addressing the merits of petitioner's claim for relief based on the state court's delay in resolving petitioner's post-trial motions." *Id.* ; (Order of dismissal) (Feb. 10, 2006) (docket no. 38).

Petitioner, through new appellate counsel, moved for a new trial and an evidentiary hearing in state court. After a lengthy hearing, that court denied petitioner's motions. *See* Motion Trans. (April 11, 2008) (docket no. 21); Order denying defendant's motion for new trial and evidentiary hearing (April 23, 2008) (docket no. 1-3 at p. 57). In addressing petitioner's motions, the court summarized his claims as follows:

> First, Defendant seeks to have his sentence vacated because of the length of the delay in his appellate process. Defendant attributes these delays to his previous appellate counsels as well as this Court. Defendant claims that his Constitutional rights to a speedy trial, due process, and effective assistance of counsel have been so prejudiced

3

that the only fair remedy would be to vacate his sentence. In the alternative, Defendant argues that he should be entitled to a new trial because of potential third party culpability, perjured testimony by the prosecution's key witnesses, and his trial counsel's failure to present all of the evidence presented to him. Defendant claims that a new trial, or at least an evidentiary hearing, is necessary because he claims that Vail and Sisk both lied on the stand about his involvement in the murder, and he has letters allegedly written by each of them to prove it.

*Id.* at p. 3.

The court found that petitioner had not shown actual prejudice due to the delay in his appeal. *Id.* at p. 8. The court rejected petitioner's contention that that he was prejudiced by "newly discovered evidence," which consisted of letters which "tend to recant testimony given under oath at trial" by Vail and Sisk. *Id.* The court concluded that it "should view them with a distrusting eye" and should be reluctant to grant a new trial based on such evidence. *Id.* , citing *People v. Canter*, 197 Mich. App. 550, 559 (1992) (noting that recantation testimony "is traditionally regarded as suspect and untrustworthy"). After reviewing the new evidence the court concluded that "there is little reason to believe the veracity of these recanting letters by Vail and Sisk." *Id.* at p. 8. The court explained:

> To begin with, at trial, Defendant had every opportunity to, and did, cross examine Vail and Sisk, calling into question the truthfulness of their testimony in light of their plea deals with the prosecution. However, the jury still believed them, and the Defendant was found guilty. Also, both Gina Hamilton and Eilene Hamilton testified that the Defendant had made threats against anyone that was going to testify against him. Edward Becker testified that the Defendant tried to get him to kill Vail because Vail was going to testify. Becker also testified that Defendant threatened both him and Vail if they testified against him.
>
> Vail's letters are particularly more unreliable. After writing these letters to Defendant [that Vail had lied at the trial], Vail wrote letters to both the prosecutor and [Circuit Court] Judge Burkholz recanting the previous letters. He explained that he was threatened by Defendant to write the letters when they were in the same prison. These letters simply tend to show that Defendant really was threatening people who testified against him. Further, there was ample evidence at the trial that Defendant was guilty. Several witnesses testified that Defendant wore Trax tennis

4

shoes, the kind of prints found at the scene, but he was never seen in them after the murder. He told various stories to account for the cuts on his hands [after the murder]. He has Type-A blood, his hands were cut, and Type-A blood was found on one of the knives at the scene (the victim had Type-O). He was owed money by the sone of the victim and he had threatened he would get it, even if it was from the victim. He was in possession of much of the gold and jewels taken from the scene. The jury even had the opportunity to consider that Vail and Sisk might be lying, considering their plea deals. In all, the jury had ample evidence to convict and these new letters, along with Vail's subsequent letters to Judge Burkholz and the prosecutor, would not have changed that.

> The decision to grant or deny a new trial based on recantation testimony if for the trial court to decide, and in this case the recantation testimony here is too suspect to allow a new trial, especially in light of all of the evidence against Defendant. Therefore, there would be no prejudice to the Defendant because of the delay regarding this "new evidence" because this new evidence is unreliable and would not lead to a different result at trial.

*Id.* at pp. 8-9 (footnote omitted).[1]

With respect to petitioner's claims of ineffective assistance in pursuing an appeal, the court rejected petitioner's claim that the "entire delay was due to the actions solely of his appointed appellate counsel and this Court." *Id.* at p. 9. The court noted: that petitioner first inquired with MAACS regarding his appellate counsel in 1991 (three years after counsel's appointment); that MAACS issued formal findings for removal of first counsel for mishandling this case and other appeals; after being assured by this counsel that the appeal would be perfected, petitioner declined an offer by MAACS to appoint new counsel; that for this reason, a large part of

---

[1] In performing a plain error review of the trial court's order denying the motion for a new trial, the Michigan Court of Appeals noted that the trial court had misstated the victim's blood type:

> The trial court found "ample evidence at the trial that [d]efendant was guilty." Thus the trial court did not rely entirely on the misstated difference between Mrs. McNulty's blood type and defendant's blood type. As such, the error was harmless.

*People v. Van Durmen*, No. 282172, slip op. at p. 6. Furthermore, petitioner's claim on this issue is procedurally defaulted. *See* discussion, *infra*.

5

the delay can be attributed to petitioner's decision to retain counsel who was determined to be inadequately handling the appeal; that petitioner did not make further inquiries for several years; that in 1998 second counsel was appointed; and that petitioner did not seek assistance from the Michigan Court of Appeals or Michigan Supreme Court to obtain resolution of issues related to his trial court motions. *Id.* at pp. 9-10. When petitioner filed his federal habeas action, petitioner admitted that he asked his appointed counsel not to take any further action on his behalf. *Id.* at p. 10. For these reasons, the court concluded that "significant portions of this delay can be attributed to Defendant's own actions." *Id.*

While appellate counsel failed to timely bring petitioner's initial motion for a new trial to hearing, this did not affect plaintiff's time to file an appeal. *Id.* In this regard, the trial court found that at the time of the hearing on the present motion for a new trial, the Michigan Court of Appeals was "currently waiting to review the appeal filed by his current attorney pending the outcome of this motion." *Id.*

After reviewing the record, the trial court determined that:

> Defendant's ineffective assistance claim fails because even if he could show that the delays were completely attributable to his appellate counsel, he cannot show that there is a reasonable probability that the result would be different. Regardless of when the motions for new trial would have been heard, the arguments presented are without merit and do not warrant reversal or a new trial. Therefore, Defendant has failed to show ineffective assistance of counsel.
>
> \*    \*    \*
>
> In this case, Defendant's ability to file an appeal has been significantly delayed due to errors and omissions by himself, his various appellate counsels, and this Court. However, because the issues Defendant is raising have no merit and would not change the result of his conviction, he has not been prejudiced by the delays and is not entitled to relief. Because of the lack of trustworthiness and reliability of the alleged "newly discovered evidence," Defendant has failed to carry

6

his burden for a new trial. Defendant's Motion for a New Trial and Evidentiary Hearing is **DENIED**.

*Id.*

Petitioner, through counsel, appealed this order to the Michigan Court of Appeals and filed a brief in that court raising five issues:

I. Whether the conviction and sentence should be vacated because the [petitioner's] constitutional rights to: due process; equal protection of the law; a speedy trial/appeal; and the right to effective assistance of counsel were violated?

II. Whether the trial court erred by not granting a new trial based on newly discovered evidence?

III. Whether the trial court denied [petitioner] a fair trial, his due process rights, and his right to confrontation by: violating his duty to see that [petitioner] has a fair trial; evidentiary rulings; and giving improper instructions?

IV. Whether the prosecutor's actions denied [petitioner] a fair trial and his due process rights under the Michigan and Federal Constitutions?

V. Whether [petitioner] received ineffective assistance of trial and prior appellate counsel?

Brief (docket no. 20).

Petitioner filed a *pro se* supplemental brief dated October 6, 2008, which was superseded by a second pro se supplemental brief dated October 30, 2008. *See Pro se* supplemental briefs (docket no. 20). Petitioner raised three issues in his second *pro se* supplemental brief :

VI. [Petitioner's] conviction should be overturned because there was insufficient credible evidence at trial to prove [petitioner] guilty of the crime. US Const Am V & XIV. Michigan Const. 1963 Art 1 § 2 & 17.

VII. Where the prosecution has necessarily presented to the trial court materially misleading, inaccurate or false information in his answer in opposition for new trial and evidentiary hearing, did the trial

7

    court's representation of the facts constitute error that was devoid of due process in violation of [petitioner's] constitutional rights, substantive and procedural. Mich. Const. 1963 Article 1 Sec. 2, 17. United States Const. Am V & XIV, and violative of his right to confrontation and fair trial US Const. VI.

 VIII. Did the trial court and jury use evidence in consideration of its verdicts, where evidence such as blood typing, or other evidence fail to establish a proper evidentiary basis, i.e., chain of evidence to persuade the jury of circumstantial evidence in violation of [petitioner's] right to a fair trial. US Constitution Am V, VI & XIV Michigan Const. 1963 Article 1 § 20.

Second *pro se* supplemental brief (docket no. 20).

  The Michigan Court of Appeals affirmed petitioner's convictions. *People v. Van Durmen*, No. 282172 (July 14, 2009). Petitioner raised the same issues in his application for leave to appeal to the Michigan Supreme Court, which that court denied because it was not persuaded that the questions presented should be reviewed. *People v. Van Durmen*, No. 139576 (Mich. Dec. 21, 2009) (docket no. 21).

  Petitioner raised these same eight grounds (renumbered and phrased slightly differently) in his present habeas petition:

 I. Inordinate appellate delay

 II. Ineffective assistance of trial/appellate counsel

 III. Newly discovered evidence/third party culpability

 IV. Denial of a fair trial and due process by the trial judge's repeated bias in the admission of incredible evidence and giving an improper instruction that conflicted with petitioner's trial testimony as to petitioner's theory of the case

 V. Prosecutorial misconduct

 VI. Petitioner's conviction should be overturned because there was insufficient credible evidence at trial to prove [petitioner] guilty of

    the crime.  US Const Am V & VI.  Mich. Const. 1963 Art 1 § 2 & § 17

 VII. Where the prosecution has necessarily presented to the trial court materially misleading, inaccurate or false information in its answer in opposition for new trial and evidentiary hearing, the trial court's representation of the facts constituted error that was devoid of due process in violation of [petitioner's] constitutional rights, substantive and procedural

 VIII. The trial court used erroneous evidence to deny petitioner's motion for a new trial, the same evidence that was presented to the jury by innuendo (and without proper evidentiary analysis) to persuade by innuendo petitioner's guilt, in violation of petitioner's right to a fair trial and his due process rights to a fair appeal.

Petition (docket no. 1).  This matter is now before the court.

   **II.** **Procedural default (part of Issue IV, and Issues V and VIII )**

   **A.** **Plain error review**

   The Michigan Court of Appeals provided only "plain error" review to petitioner's unpreserved claims raised regarding part of Issue IV (improper jury instructions), as well as Issues V (prosecutorial misconduct) and VIII (trial court's use of erroneous evidence in denying motion for new trial).  *See People v. Van Durmen*, No. 282172, slip op. at p. 4 (prosecutorial misconduct and improper jury instructions) and  pp. 6-7 (trial court error in denying motion for a new trial). Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents

federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine**.** Only a state procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court mus also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

These issues were subject to plain error review due to petitioner's failure to object and preserve three issues for appellate review. Petitioner's failure to comply with the state's contemporaneous-objection rule resulted in a procedural default of these issues for purposes of federal habeas review. *See, e.g., Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007). The state court's plain error analysis did not save petitioner from the procedural default of this issue. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). "Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Id. See also, Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default).

### B. Cause and Prejudice

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel may constitute cause for excusing a procedural default, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *Id.*; *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Id.* at 689-690. Ineffective assistance of counsel adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim which can be procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

In his reply to respondent's answer (titled "Traverse and Answer in opposition to petition for writ of habeas corpus) (docket no. 9), petitioner asserts in conclusory fashion that his trial counsel was ineffective for failing to raise objections at trial resulting in the unpreserved issues

11

on appeal. *See*, *e.g.*, Traverse and Answer (docket no. 9 at p. 26). However, petitioner did not take appropriate steps to exhaust the issue of ineffective assistance of trial counsel at the appellate level. When a habeas petitioner raises ineffective assistance of counsel as cause for a procedural default, this independent constitutional claim must be exhausted in the state courts:

> We think that the exhaustion doctrine, which is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings," *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982), generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. The question whether there is cause for a procedural default does not pose any occasion for applying the exhaustion doctrine when the federal habeas court can adjudicate the question of cause - a question of federal law - without deciding an independent and unexhausted constitutional claim on the merits. But if a petitioner could raise his ineffective assistance claim for the first time on federal habeas in order to show cause for a procedural default, the federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available. The principle of comity that underlies the exhaustion doctrine would be ill-served by a rule that allowed a federal district court "to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950), and that holds true whether an ineffective assistance claim is asserted as cause for a procedural default or denominated as an independent ground for habeas relief.

*Ewing v. McMackin*, 799 F.2d 1143, 1149-50 (6th Cir. 1986).

The exhaustion requirement is satisfied when the federal claim raised in the habeas petition has been "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). Here, petitioner did not fairly present his claims of ineffective assistance of counsel which he contends are cause for the procedurally defaulted issues. "A claim may only be considered 'fairly presented' if the petitioner asserted both the factual and legal basis for his claim to the state courts." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). A habeas petitioner can take four actions which are significant to the determination whether a claim has been "fairly presented" to the state

12

court: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Id.*

Here, petitioner's appellate brief listed two issues of ineffective assistance of counsel. In appellate Issue I, petitioner raised an ineffective assistance of counsel claim with respect to appellate counsel's failure to file a timely appeal. This theory of ineffective assistance is inapplicable to the procedurally defaulted claim, i.e., trial counsel's failure to object to the prosecutor's actions, evidentiary rulings or jury instructions. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court"). In appellate Issue IV, petitioner raised another ineffective assistance of counsel claim. However, this claim did not address the legal and factual basis explaining why trial counsel's failure to object to the procedurally defaulted claims constituted ineffective assistance of counsel under the *Strickland* standard. Rather, petitioner's appellate brief provided only a rather vague and conclusory legal argument:

> The law on ineffective assistance of counsel has been gone into at length in question presented I, Section A.4. Those arguments and citations are applicable here too.
>
> A failure of a defense attorney to object to trial statements and situations which are prejudicial has been held by this court to be a serious mistake under *Strickland v. Washington*, *supra*. *See People v. Fenner*, 136 Mich App 45; 356 NW2d 1 (1984). If this court were to now say that these issues cannot be considered because of a failure to object at trial, then these would be serious mistakes (or if there is a higher "bar" to reversible error because of lack of objection). These mistakes should undermine the confidence in the outcome. These issues would also result in "plain error" under *People v Carines*, *supra*. (The specifics of those mistakes and arguments are contained in other sections of this brief and are incorporated herein.)

13

(Prior appellate counsel has been found to have provided ineffective assistance. See Appendix A.) [Emphasis omitted]

Petitioner's Brief at pp. 49-50 (docket no. 20).[2] The court does not view this argument as "fairly presenting" petitioner's ineffective assistance of counsel claims to the state appellate court. The issue raised in the Michigan Court of Appeals neither identified counsel's deficient actions nor applied *Strickland*'s two-prong test to those actions which petitioner now claims as cause for the procedural defaults.[3]

Because Petitioner has some claims that are exhausted and some that are not, his petition is "mixed." Under *Lundy*, 455 U.S. at 22, district courts are directed to dismiss mixed petitions without prejudice in order to allow petitioners to return to state court to exhaust remedies. In this case, petitioner can pursue these ineffective assistance of counsel claims by filing a motion for relief from his judgment of conviction pursuant to MCR 6.500 *et seq*. Given this procedural posture, petitioner should be given the option to (1) stay the petition and hold it in abeyance while he returns to the state court to raise his unexhausted claims of ineffective assistance of counsel, or (2) permit petitioner to dismiss the unexhausted claims and proceed with the exhausted claims. *Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009).

---

[2] The court notes that the referenced "Appendix A" is not attached to petitioner's brief in this court's transcript of the appellate record. *See* docket no. 20.

[3] Michigan Court of Appeals' opinion did not address this cryptic argument regarding ineffective assistance of counsel. It is well-established that "whether the exhaustion requirement of 28 U.S.C. § 2254(b) has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court." *Smith v. Digmon*, 434 U.S. 332, 333-34 (1978). However, in this case, petitioner's brief did not "squarely raise" his multiple claims of ineffective assistance of counsel. Rather, petitioner raised the spectre of possible ineffective assistance of counsel claims, and effectively invited the Michigan Court of Appeals to sift through the record, identify potential claims, create arguments that could support such claims, and then address the merits of those claims.

Since the habeas statute was amended to impose a one-year statute of limitations on habeas claims, *see* 28 U.S.C. § 2244(d)(1), dismissal without prejudice often effectively precludes future federal habeas review. In *Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002), the Sixth Circuit held that dismissal of a mixed petition could jeopardize the timeliness of a subsequent petition, the district court should dismiss only the unexhausted claims and stay further proceedings on the remaining portion until the petitioner has exhausted his claims in the state court. The *Palmer* Court has indicated that thirty days is a reasonable amount of time for a petitioner to file a motion for post-conviction relief in state court, and another thirty days is a reasonable amount of time for a petitioner to return to federal court after he has exhausted his state-court remedies. *Palmer*, 276 F.3d at 781. If petitioner chooses return to state court to exhaust his ineffective assistance of counsel claims, then the timelines set forth in *Palmer* should apply. If petitioner chooses to dismiss the unexhausted claims (i.e., the procedurally defaulted claims), then he should move for dismissal within the same time period of thirty days.

### III.     Recommendation

For these reasons, I respectfully recommend that this mixed habeas petition be **DISMISSED** without prejudice for lack of exhaustion. I further recommend that petitioner either pursue the unexhausted claims in state court or dismiss the unexhausted claims following the procedure as set forth in this report.


Dated:  February 14, 2013                            /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).