UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY VAN DURMEN,

                Petitioner,

v.

CAROLE HOWES,

                Respondent.

_____/

Case No. 1:10-cv-157

Hon. Ray Kent

**OPINION**

Anthony Van Durmen (sometimes referred to as "Vandurmen") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons discussed below, the petition will be denied.

### I.      Background

On July 16, 1987, a jury convicted Van Durmen of first-degree premeditated murder, M.C.L. § 750.316, first-degree felony-murder, M.C.L. § 750.316, and armed robbery, M.C.L. § 750.529.  *People v. Vandurmen*, No. 282172, 2009 WL 2032044 at *1 (Mich. App. July 14, 2009).  Van Durmen's convictions arose from the following facts:

> Emma McNulty and her husband Thomas McNulty lived in Niles, Michigan. Mrs. McNulty's adult child from a previous marriage owed defendant $120 for marijuana.  After making prior threats to get his money one way or another, on December 23, 1986, defendant, accompanied by David Vail and Jeremy Sisk, broke into the McNulty's home.  Mrs. McNulty was the only one home and David Vail testified that she was brutally attacked and killed by defendant. Defendant and his accomplices left the McNulty home stealing valuable coins and jewelry.

*Id.*  The trial court sentenced Van Durmen to life imprisonment without parole for the murder charges and life imprisonment for the armed robbery charge.  *Id.*

1

II.     **Procedural history and Habeas claims**

A.     **The state court proceedings**

In an order entered on May 8, 2007, Berrien County Circuit Court Judge Charles

T. LaSata set out Van Durmen's tortuous path to obtain an appeal of his convictions.  In this order,

Judge LaSata re-issued the December 2, 2004 order from Berrien County Circuit Court Judge John

T. Hammond which vacated the armed robbery conviction and clarified that the first-degree

murder conviction was based upon two separate theories, premeditated murder and felony murder

(with armed robbery as the predicate felony) so that Van Durmen could file a timely appeal:

> On July 16, 1987, a jury found Defendant guilty of first degree premeditated
> murder, first degree felony murder and armed robbery. Defendant was sentenced
> on August 31, 1987. The trial court appointed appellate counsel who filed several
> briefs in December 1987. Judge John N. Fields, who replaced the retired Judge Zoe
> S. Burkholz, appointed current Appellate Counsel on April 28, l998 as substitute
> appellate counsel. The chain of events leading to the substitution is outlined in a
> March 5, 1998 letter from SADO [State Appellate Defender Office] to the Chief
> Deputy Clerk of the Court of Appeals and a March 25, 1998 letter from SADO to
> Judge Fields of the Berrien County Circuit Court. MAACS [Michigan Appellate
> Assigned Counsel System] issued formal findings for removal of Defendant's
> initial appellate counsel on September 16, 1991 for mishandling the case and 18
> other appeals. Defendant, after being assured by counsel that the appeals would be
> perfected, declined an offer by MAACS to appoint new counsel later that month.
> ln January 1998, Defendant asked MAACS to appoint new appellate counsel as his
> initial appellate counsel failed to perfect the appeal prior to being suspended by the
> Attorney Discipline Board in March 1993.
>
> Current Appellate Counsel did not file any papers in this matter until 2001.
> In 2001, the People filed a motion to Notify Defendant of Proposed Dismissal for
> Lack of Progress. The Court issued an order for the SADO to respond. On February
> 20, 2001, current Appellate Counsel indicated in his response that he had engaged
> in extensive factual investigation of certain matters in the case.  Counsel also took
> responsibility for failing to file additional pleadings, indicated that he had already
> completed much of the work necessary to file supplemental pleadings, and
> explained the heavy demands placed on his schedule.  Counsel subsequently filed
> supplemental briefs on the Motion for New Trial on March 21, 2001.  It should be
> noted that the original Motion for New Trial was filed on December 3, 1987, more
> than thirteen years earlier.
>
> No action was taken on the motion until December 2004. After the
> Supplemental Brief was filed, the case as [sic] assigned to Judge Angela M. Pasula

under the court's policy of randomly assigning post-judgment proceedings. The case was reassigned on May 5, 2001, to Judge John T. Hammond after Judge Pasula disqualified herself because she was the Assistant Prosecuting Attorney who tried the case.  The motion languished until December 2, 2004. Judge Hammond signed an order denying the motion for a new trial, but vacating Defendant's conviction and sentence for armed robbery. The order also entered an amended judgment of conviction and sentence for one murder in the first degree supported by two theories: premeditated murder and felony murder.  No copy of the order or amended judgment of conviction was served on Defendant or Appellate Counsel.  Again, it should he noted the order denying the motion for new trial was signed one day short of 17 years after the motion was filed.

In February 2006, Defendant received a copy of his court file after he filed a motion under MCR 6.433(C). Defendant found and read, apparently for the first time, the December 2004 order. Appellate Counsel learned about the December 2004 order from Defendant. On May 22, 2006, Counsel wrote a letter to Defendant explaining that he was never served with a copy of the order. Counsel apologized to Defendant for failing lo keep him apprised of the status of the case. Counsel stated he could not justify his failure to discover the existence of the decision and took full responsibility for not insisting on a more timely decision and for not keeping better track of the case. Counsel also wrote a letter to the trial court on May 23, 2006 asking for any documentation that the order was properly served on his office or on the prosecution. The clerk sent a letter back on May 31, 2006 stating that the filed file does not reflect a proof of service.

Defendant filed this Motion for Dismissal of Present Counsel and/or Substitution of Counsel on December 4, 2006. Defendant filed a supplement to the Motion on March 30, 2007, in which he also requests this court reissue the judgment under MCR 6.428 in order to restart his time to file an appeal.  This motion was filed more than 19 years after Defendant was sentenced. . . .

A court may reissue a judgment if a defendant did not appeal within the time allowed by MCR 7.204(A)(2), demonstrates that his attorney failed to provide effective assistance and that, but for that defective assistance, an appeal of right would have been perfected. MCR 6.248.  This court rule became effective January 1, 2006. The 2004 order and amended judgment, under MCR 2.602(A)(2), triggered the time to file an appeal the day the order was signed, December 3, 2004 [sic]. The court rule requires sentence of a judgment or order on all parties and proof of service to be filed in the court file. MCR 2.602(D)(1).  At least one commentator has noted the rule is "unfortunately silent" on what remedies a party may have if the rule is violated. *Ronald Longhofer, Michigan Court Rules Practice: Text*, vol 3 (5th ed) p. 325. In this case, the trial court never served any of the parties with notice of the order or judgment. Appellate Counsel acknowledges his failure to insist on a timely disposition of the motion and failure to keep track of the case. Had Counsel been aware of that order and judgment, Defendant may have timely

3

perfected his appeal. In light of the trial court and Counsel's oversight, this Court hereby reissues the December 3, 2004 [sic] order and judgment.

      For the reasons provided herein, Defendant Van Durmen's Motion for Dismissal of Present Counsel and/or Substitution of Counsel and Motion for Reissuance of Judgment are **GRANTED. It is so ordered.**

Order (Judge LaSata) (May 8, 2007) (ECF No. 21, PageID.4841-4845)  (footnote omitted).

      Plaintiff appealed the convictions to the Michigan Court of Appeals which affirmed the convictions and sentence on July 14, 2009, in *People v. Vandurmen*, No. 282172, 2009 WL 2032044.  The Michigan Supreme Court denied leave to appeal.  *See People v. Vandurmen*, No. 139576 (Mich. Dec. 21, 2009) (ECF No. 21, PageID.4654).

### B.      The Habeas Petition

      On February 18, 2010, Van Durmen filed the present habeas petition raising eight grounds:

I.      Inordinate appellate delay

II.      Ineffective assistance of trial/appellate counsel

III.      Newly discovered evidence/third party culpability

IV.      Denial of a fair trial and due process by the trial judge's repeated bias in the admission of incredible evidence and giving an improper instruction that conflicted with petitioner's trial testimony as to petitioner's theory of the case

V.      Prosecutorial misconduct

VI.      Petitioner's conviction should be overturned because there was insufficient credible evidence at trial to prove [petitioner] guilty of the crime.  US Const Am V & VI.  Mich. Const. 1963 Art 1 § 2 & § 17

VII.      Where the prosecution has necessarily presented to the trial court materially misleading, inaccurate or false information in its answer in opposition for new trial and evidentiary hearing, the trial court's representation of the facts constituted error that was devoid of due process in violation of [petitioner's] constitutional rights, substantive and procedural

VIII.   The trial court used erroneous evidence to deny petitioner's motion for a new trial, the same evidence that was presented to the jury by innuendo (and without proper evidentiary analysis) to persuade by innuendo petitioner's guilt, in violation of petitioner's right to a fair trial and his due process rights to a fair appeal.

Petition (ECF No. 1).  *See* Report and Recommendation (ECF No. 24, PageID.603-604).  This Court entered judgment in favor of respondent on March 29, 2013.  *See* Order (ECF No. 30); Judgment (ECF No. 31).

### C.      The Sixth Circuit's Order

Van Durmen appealed. In *Anthony Van Durmen v. Willie Smith*, No. 13-1522 (Dec. 12, 2014), the Sixth Circuit addressed the progression of his federal habeas petition and vacated this Court's judgment:

In 1987, a jury convicted Van Durmen of first-degree premeditated murder, first-degree felony murder, and armed robbery, in violation of Michigan law. He was sentenced to life imprisonment without the possibility of parole on the murder charges and life imprisonment on the armed robbery charge. In 2004, the trial court vacated Van Durmen's conviction and sentence for armed robbery based on double jeopardy principles and amended the judgment of conviction to clarify that Van Durmen's conviction was for one count of first-degree murder supported by two theories, i.e., premeditated murder and felony murder. Van Durmen's sentence of life imprisonment without parole remained unchanged.

In 2002, Van Durmen filed his first federal petition for a writ of habeas corpus. Because post-trial motions remained pending in the trial court and Van Durmen's time for appealing his conviction had not run, the district court dismissed the habeas petition for failure to exhaust available state-court remedies, *Van Durmen v. Jones*, No. 4:02-cv-184, 2006 WL 322486 (W.D. Mich. Feb. 10, 2006) (order), and Van Durmen did not appeal that dismissal. Another two years passed before Van Durmen's appeal was presented to the Michigan Court of Appeals. In 2008, the Michigan Court of Appeals affirmed Van Durmen's conviction, and on December 21, 2009, the Michigan Supreme Court denied further review. *People v. Vandurmen*, No. 282172, 2009 WL 2032044 (Mich. Ct. App. July 14, 2009), *lv. appeal denied*, 775 N.W.2d 784 (Mich. 2009).

In 2010, Van Durmen filed the instant habeas petition, raising the following eight grounds for relief: (1) delay in his appeal; (2) ineffective assistance of trial and appellate counsel; (3) new evidence of innocence; (4) jury instruction and evidentiary errors; (5) prosecutorial misconduct during trial; (6) insufficient

evidence to support his conviction; (7) prosecutorial misconduct in responding to his motion for new trial; and (8) trial court error in denying his motion for new trial. After concluding that claim four, in part, and claims five and eight were procedurally defaulted and that Van Durmen had not exhausted the ineffective-assistance- of-counsel claims that he cited as cause to excuse the default of those claims, a magistrate judge recommended dismissing the petition without prejudice for failure to exhaust.  Over Van Durmen's objections, which included a request for a stay and abeyance while he exhausted his state court remedies, the district court adopted the magistrate judge's report and recommendation, dismissed the petition without prejudice, and denied Van Durmen a certificate of appealability (COA). This court granted a COA on the following issue only: whether the district court erred in dismissing the petition in its entirety without prejudice for failure to exhaust state-court remedies. *See Van Durmen v. Smith*, No. 13-1522 (6th Cir. Mar. 28, 2014) (order).

*Van Durmen*, No. 13-1522 (ECF No. 38, PageID.649).  Ultimately, the Sixth Circuit held that,

 . . . Under these circumstances, a remand to the district court is appropriate in order for the district court to resolve the conflicts between its judgment dismissing Van Durmen's petition without prejudice and the magistrate judge's finding, which the district court adopted, that a dismissal without prejudice could impair Van Durmen's § 2254 petition.

Accordingly, we vacate the district court's judgment insofar as the district court dismissed Van Durmen's petition in its entirety without prejudice and remand the matter to the district court for further proceedings consistent with this court's order.

*Id*. at PageID.652.

### D.    Remand to state court

On remand, this Court stayed the petition and ordered

that petitioner shall have thirty (30) days from the date of this order to file a motion for relief from judgment in the Berrien County Circuit Court raising the three ineffective assistance of counsel claims which he asserts as cause for the procedural defaults of Issues IV, V and VIII. Petitioner must file a motion to lift the stay and re-open this action no later than thirty (30) days after a final decision by the Michigan Supreme Court on his unexhausted claims. Petitioner's motion shall include a description of the newly exhausted claims and the dates and substance of decision at each step of state-court review.

Order (Sept. 14, 2015) (ECF No. 42, PageID.660).

This Court further ordered "that petitioner may, in the alternative, file a motion to dismiss the three unexhausted ineffective assistance of counsel claims," that if petitioner  chooses this alternative "then his motion must be filed not later than thirty (30) days after the entry of this order",  that the Court may dismiss the petition "if petitioner fails to comply with the deadlines imposed in this order," and  "that this case shall be administratively closed until such time as petitioner files a motion to lift the stay and re-open in accordance with the procedures set forth in this order." *Id*. at PageID.661.

Van Durmen returned to state court to seek post-judgment relief.  The Berrien County Circuit Court identified three claims in Van Durmen's motion for relief from judgment ("MRJ"):

> Timely filed, Defendant's instant motion for relief from judgment raises an ineffective assistance of counsel claim, essentially based upon three areas of similar challenge (albeit reordered and described slightly differently from his writ of habeas corpus[)] - i) failure to investigate blood evidence or raise challenge on appeal; ii) failure to object to alleged prosecutorial misconduct; and iii) failure to object to admission of certain evidence and giving of certain jury instructions. (Motion, 10/5/15, p 4). Defendant claims such error by counsel warrants vacation of all the convictions and essentially a new trial, including evidentiary testing of certain DNA evidence, if available. (Motion, 10/5/15, p 25).

MRJ Opinion and Order (Berrien Co. Cir. Ct.) (Oct. 18, 2017) (ECF No. 46-12, PageID.2550-2551). The state court also denied Van Durmen's motion to modify the 2005 Judgment *nunc pro tunc* based upon Judge Hammond's December 2, 2004 judgment.  *Id*. at PageID.2557-2560.

The Michigan Court of Appeals denied Van Durmen's delayed application for leave to appeal the trial court's order "because defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Vandurmen*, No. 3421116 (Mich. App. Aug. 7, 2018) (ECF No. 46-14, PageID.2601). The Michigan Supreme Court denied Van Durmen's application for leave to appeal the Court of Appeals order "because the defendant has

failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v.*

*Vandurmen*, No. 158431 (April 2, 2019) (ECF No. 46-20, PageID.4344).

E.     <strong>Van Durmen's return to federal court</strong>

On October 23, 2019, this Court granted Van Durmen's motion to re-open the case:

> As discussed in this Court's previous order, plaintiff had three unexhausted claims: Issue IV (improper jury instructions); Issue V (prosecutorial misconduct); and Issue VIII (trial court's use of erroneous evidence in denying motion for new trial). Order (ECF No. 42, PageID.658). The Court noted that plaintiff did exhaust a second claim in Issue IV ("[d]enial of a fair trial and due process by the trial judge's repeated bias in the admission of incredible evidence."). *Id*. citing Petition (ECF No. 1, PageID.6).
>
> The record presented by petitioner indicates that he exhausted the three issues as instructed by the Court. *See* Exhibits (ECF No. 43-1). This record includes: a motion for relief from judgment filed in Berrien County Trial Court case no. 1987-001308-FC (dated October 2, 2015) (ECF No. 43-1, PageID.668-692); an opinion and order regarding petitioner's motion for relief from judgment (dated October 18, 2017) (ECF No. 43-1, PageID.693-705); an order from the Michigan Court of Appeals denying petitioner's delayed application for leave to appeal in case no. 342116 (dated August 7, 2018) (ECF No. 43-1, PageID.706); and, an order from the Michigan Supreme Court denying petitioner's application for leave to appeal in case no. 158431 (dated April 2, 2019) (ECF No. 43-1, PageID.707). While petitioner has submitted sufficient documents to establish that he followed this Court's timeline for exhausting the issues, these documents do not include a complete state court record, *e.g.*, a trial court docket sheet, any response brief(s) filed in the trial court, petitioner's delayed application for leave to appeal to the Michigan Court of Appeals, or petitioner's application for leave to appeal to the Michigan Supreme Court.

Order (ECF No. 44, PageID.708-709).

The Court directed respondent to file a file a supplemental answer with respect to

the newly exhausted issues (IV, V and VIII) and a supplemental transcript of Van Durmen's

proceedings in the state courts commencing with his motion for relief from judgment. *Id*. at

8

PageID.709.[1]  Petitioner filed a response (ECF No. 47) and the parties consented to the undersigned resolving this matter pursuant to 28 U.S.C. § 636(c).  *See* Consents (ECF Nos. 49 and 50).

### F.     The armed robbery conviction

As discussed, the Berrien County Circuit Court did not enter an amended judgment which correctly reflected Judge Hammond's December 2, 2004 order.  As the Sixth Circuit found, the trial court (Judge Hammond) vacated Van Durmen's conviction and sentence for armed robbery based on double jeopardy principles and amended the judgment of conviction to clarify that Van Durmen's conviction was for one count of first-degree murder supported by two theories, *i.e.*, premeditated murder and felony murder." *See* Opinion and Order (Dec. 2, 2004) (ECF No. 21, PageID.4869-4871).

The Berrien County Circuit Court did enter a Judgment of Sentence bearing what appears to be a file stamp of May 4, 2004, a date of "5/4/05", and the signature "Honorable Judge Dennis M. Wiley for Hon John Hammond).  *See* 2005 Judgment (ECF No. 46-14, PageID.2710). Presumably, the 2005 judgment was supposed to reflect Judge Hammond's December 2, 2004 order.  However, it did not.  Rather, the 2005 Judgment stated:

> **DEFENDANTS [sic] CONVICTION IS FOR ONE SENTENCE OF FIRST DEGREE MURDER SUPPORTED BY TWO THEORIES: PREMEDITATED MURDER AND FELONY MURDER. JURY CONVICTION IS ENTERED ALSO FOR ROBBERY ARMED.**

*Id*. (emphasis in original).  The 2005 judgment contained a clerical error, because it incorrectly entered a conviction for armed robbery.  The 2005 Judgment identified Count 1 as "MURDER-

---

[1] The Court notes that when respondent answered the petition in 2012, she filed paper copies of the Rule 5 materials, which consisted of the 1987 trial transcripts and the transcripts of his appeal as of right (Michigan Court of Appeals No. 282172 and Michigan Supreme Court No. 139576).  *See* Rule 5 Materials (ECF Nos. 12 through 22).  Respondent has e-filed the 1987 trial transcripts (ECF Nos. 46-3 through 46-9), as well as the preliminary examination transcripts (ECF Nos. 46-1 and 46-2), the MRJ (ECF Nos. 46-10 through 46-12), the motion for a new trial (ECF No. 46-13), and  the associated appeal in Michigan Court of Appeals No. 342116 (ECF Nos. 46-14 through 46-19) and Michigan Supreme Court No. 158431(ECF No. 46-20). After the case was re-opened, this Court e-filed the paper Rule 5 materials containing the transcripts from Van Durmen's appeal as of right (ECF Nos. 20 and 21).

1ST DG-PREMEDITATE & FLEONY [sic] MURDER" and Count 3 "ROBBERY ARMED". *Id.* The state court sentenced Van Durmen to "LIFE . . .without parole" as to Count 1 (murder), and to "LIFE . . . eligible for parole" as to Count 3 (armed robbery).

As discussed, while Judge LaSata's May 8, 2007 order re-issued Judge Hammond's December 2, 2004 judgment, he did not enter a separate amended judgment on that date.  When Van Durmen filed his claim of appeal in 2007, the Michigan Court of Appeals addressed the 2005 Judgment which included the conviction for armed robbery.  *See* Michigan Court of Appeals No. 282172 Trans. (ECF No. 20, PageID.4421-4429); *See Vandurmen*, No. 282172, 2009 WL 2032044 at *1, *5 (identifying the armed robbery conviction and addressing Van Durmen's claim that there was insufficient evidence to support that conviction).

Given this record, the Sixth Circuit's conclusion that Van Durmen's armed robbery conviction was vacated in 2004 is supported by the record and binding on this Court in the present federal habeas action.  Accordingly, this Court will address the evidence of the armed robbery as relevant to establish the predicate felony for Van Durmen's felony-murder conviction.

### III.    Standard of review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  In this regard, 28 U.S.C. § 2254 provides that,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under this statute, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381-82 (2000); *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694. "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer v. Warren*, 959 F.3d 704, 721 (2020). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). In addressing a petitioner's habeas claims, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *Sumner v. Mata*, 449 U.S. 539, 546-547 (1981).

Section 2254(d) limits the facts a court may consider on habeas review. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "[I]f the petitioner's claim was never adjudicated on the merits by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. "Instead, the petitioner's claim is reviewed *de novo* as it would be on direct appeal." *Id*.

## IV.    Procedural default

Respondent contends that Van Durmen procedurally defaulted Issues II, IV, V and VIII. *See* Supplemental Answer (ECF No. 45, PageID.760-761, 792-795, 808, 831-833). Where

"a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  However, federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.").  Van Durmen's claims have evolved over the years.  Rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy dictates that the Court address the merits of Van Durmen's claims.  *See Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) (addressing the merits because "the cause-and-prejudice analysis adds nothing but complexity to the case").

## V.     Discussion

### A.     Inordinate Appellate Delay (Issue I)

Van Durmen contends that he was denied a speedy appeal.  The Michigan Court of Appeals addressed this claim as follows:

> Defendant first argues that his constitutional rights of equal protection, due process, and effective assistance of counsel were violated by the delay in his appeal caused primarily by prior appellate attorneys. We disagree. We initially note that the trial court carefully analyzed this issue in deciding defendant's motion for new trial. The trial court concluded that the 20-year delay in perfecting the appeal did not prejudice defendant because it did not affect the outcome of the appeal. We agree with the trial court.

> This Court reviews constitutional questions de novo. *People v. Pitts*, 222 Mich.App. 260, 263, 564 N.W.2d 93 (1997). Further, this Court reviews a defendant's claim that he was denied the effective assistance of counsel as a mixed question of fact and law. *People v. LeBlanc*, 465 Mich. 575, 579, 640 N.W.2d 246

(2002). The trial court's findings of fact are reviewed for clear error and questions of constitutional law are reviewed de novo. *Id*.

The equal protection guarantee is a measure of our constitution's tolerance of government classification schemes, not a source of substantive rights or liberties. *Doe v. Dep't of Social Services*, 439 Mich. 650, 661, 487 N.W.2d 166 (1992). In this case, defendant did not provide any evidence that he was being treated differently based on any government classification. Therefore, there is no equal protection claim.

A delay in appellate review does not automatically entitle a defendant to a new trial. *People v. Gorka*, 381 Mich. 515, 520, 164 N.W.2d 30 (1969); *People v. LaTeur*, 39 Mich.App. 700, 705, 198 N.W.2d 727 (1972). Due process is only violated when a defendant is prejudiced by the delay, not simply because a delay occurred. *People v. McNamee*, 67 Mich.App. 198, 205, 240 N.W.2d 758 (1976). Michigan courts have not directly addressed the issue whether mere passage of time could result in prejudice, but have held that consideration of the merits of a defendant's appeal can negate any claim of prejudice arising out of the delay. *People v. Missouri*, 100 Mich.App. 310, 325, 299 N.W.2d 346 (1980); *McNamee, supra*. Courts outside Michigan have recognized three interests to consider when evaluating whether prejudice occurred by a delay in an appeal: oppressive incarceration pending appeal, anxiety and concern while awaiting the outcome of the appeal, and the likely impairment of grounds for appeal or viability of defenses in cases of a retrial. *United States v. Smith*, 94 F.3d 204, 211 (C.A.6, 1996); *United States v. Antoine*, 904 F.2d 1379, 1382 (C.A.9, 1990); *see also, People v. White*, 54 Mich.App. 342, 351, 220 N.W.2d 789 (1974). The most important of these factors is the possible impairment of appellate grounds or defense on retrial. *United States v. Mohawk*, 20 F.3d 1480 (C.A.9, 1994); *White, supra*. Further, no oppressive incarceration exists when the defendant was rightly convicted in the first place. *See United States v. Tucker*, 8 F.3d 673, 676 (C.A.9, 1993); *Muwwakkil v. Hoke*, 968 F.2d 284, 285 (C.A.2, 1992).

The recantation letters of the prosecution's key witnesses do not show that defendant was exposed to oppressive incarceration. Courts should be reluctant to grant new trials based on recantation testimony because it is suspect and untrustworthy, and a trial court's decision regarding recantation testimony should only be reversed for an abuse of discretion. *People v. Canter*, 197 Mich.App. 550, 559, 496 N.W.2d 336 (1992). The trial court concluded that the recanting letters written by Vail and Sisk lacked veracity. The court further concluded the letters proved that defendant threatened any witness who testified against him because Vail recanted his original recantation letter giving defendant's threats as the reason for the original recantation. Finally, the trial court determined that there was ample evidence to rightfully convict defendant despite the recantation letters. Thus, after evaluating the merits of defendant's case, the delay in defendant's appeal does not support his claim that his appeal or his defenses were impaired. *Missouri, supra*. Because defendant did not show that he was prejudiced by the delay in his appeal,

his right to due process was not violated, and the remedy in this case is the appellate review itself. *Id*.

*Vandurmen*, 2009 WL 2032044 at *1-2.

### 1.    Right to a speedy appeal

Petitioner's claim that he is entitled to a speedy appeal is not cognizable on federal habeas review.  As one court explained,

> The Sixth Circuit Court of Appeals has stated that "the Constitution does not require a state to provide a system of appeals, but if a state chooses to do so, the appeal, too, must accord with the basic requirements of due process."  *United States v. Smith*, 94 F.3d 204, 207 (6th Cir. 1996) (citing *Evitts v. Lucey*, 469 U.S. 387, 393 (1985)).  "The appeal forms an 'integral' and inextricable part of the procedures for determining whether a defendant should be deprived of his life, liberty, or property."  *Id*. An appeal which is inordinately delayed is a meaningless ritual. *Id*.

> The Supreme Court, however, has not held that there is a right to a speedy appeal, and "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' 28 U.S.C. § 2254(d)(1). It therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, [567 U.S. 37, 48-49;] 132 S. Ct. 2148, 2155 (2012).

*Hardaway v. Burt*, No. 13-13144, 2016 WL 2622351 at *19 (E.D. Mich. May 9, 2016).   *See Parker*, 567 U.S. at 48-49 ("As we explained in correcting an identical error by the Sixth Circuit two Terms ago, *see Renico*, 559 U.S., at —, 130 S.Ct., at 1865-1866, circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' 28 U.S.C. § 2254(d)(1). It therefore cannot form the basis for habeas relief under AEDPA.").   Accordingly, this claim for habeas relief is denied.

### 2.    Appellate counsel was ineffective for delaying the appeal

In an alternative claim, petitioner contends that his appellate counsel was ineffective for delaying his appeal.  The Michigan Court of Appeals addressed this claim as follows:

For defendant to establish his ineffective assistance of counsel claim, he must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms; (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different, and (3) that the resultant proceedings were fundamentally unfair or unreliable. *Bell v. Cone*, 535 U.S. 685, 695, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914, 927 (2002); *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *People v. Odom*, 276 Mich.App. 407, 415, 740 N.W.2d 557 (2007). Further, a criminal defendant's rights to appeal and to counsel on appeal include the right to effective assistance of counsel on appeal. *People v. Pauli*, 138 Mich.App. 530, 534, 361 N.W.2d 359 (1984). However, the trial court determined a large part of the delay was a result of defendant's own decision to keep as counsel someone that was determined to be inadequately handling appeals. The court further concluded that even if defendant showed his appellate counsel was completely responsible for the delays, he cannot show that there is a reasonable probability that the result would be different. Thus, defendant did not prove that he was denied effective assistance of counsel in his appeal.

*Vandurmen*, 2009 WL 2032044 at *2.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction. First, the defendant must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. With respect to the first prong, appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) citing *Strickland*. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were

16

reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal.  *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes*, 463 U.S. 745 (1983).  "[I]t is not deficient performance to leave some colorable issues out; indeed, it may even be the best type of performance."  *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015).

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52.   It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones."  *Id*. at 752, quoting R. Stern, Appellate Practice in the United States 266 (1981).  "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention."  *Id*.  The strategic and tactical choices to determine which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.1990).

Second, the defendant must show that counsel's deficient performance prejudiced the defense, *i.e.*, "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland,* 466 U.S. at 687.  The appropriate test is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*.  at 694.  In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690.  In this regard, "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."

17

*Id*. at 691.  For example, counsel has a duty to investigate all witnesses who may have information concerning his client's guilt or innocence.  *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

As Judge LaSata pointed out in his May 8, 2007 order, Van Durmen's appellate attorneys delayed his appeal for about 19 years.  Respondent, like the state appellate court, points to Van Durmen's acquiescence as a reason for excusing the ineffective assistance of appellate counsel.  *See Vandurmen*, 2009 WL 2032044 at *2 ("However, the trial court determined a large part of the delay was a result of defendant's own decision to keep as counsel someone that was determined to be inadequately handling appeals."); Respondent's Answer (ECF No. 45, PageID.758) ("Van Durmen was convicted in 1987 and yet he waited over ten years—until February 23, 1998—to request new appellate counsel. This accounts for 50% of the appellate delay in this case. Even if not dispositive, this factor strongly undercuts Van Durmen's claim, as the Michigan Court of Appeals noted.").

The Court does not accept Van Durmen's acquiescence to explain his appellate counsel's delay.  However, Van Durmen's ineffective assistance claim fails because he was not prejudiced.  The Supreme Court has held that the decision to file an appeal is in the hands of the criminal defendant and that if counsel fails to file a requested appeal, the defendant is entitled to a new appeal without showing that the appeal had merit:

> We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *See Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *cf. Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit"). This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes. At the other end of the spectrum, a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by

following his instructions, his counsel performed deficiently. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (accused has ultimate authority to make fundamental decision whether to take an appeal).

*Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

Here, Van Durmen has not established the specific instructions given to Attorney Jesse regarding an appeal. Nevertheless, even if he had explicitly told appellate counsel to file an appeal, and counsel was deficient for failing to follow that instruction, the remedy for this deficiency is the filing of an appeal.  When a criminal defendant is denied an appeal due to appellate counsel's deficiency, the remedy is for that defendant to receive an appeal "without a showing that his appeal would likely have merit."  *See Peguero*, 526 U.S. at 28.  Here, assuming that Van Durmen's appellate counsel was deficient, this deficiency was remedied when Van Durmen received his appeal in *People v. VanDurmen*, 2009 WL 2032044.  Accordingly, this claim for habeas relief is denied.

### B.    Ineffective assistance of trial/appellate counsel (Issue II)

In this claim, petitioner contends that his trial counsel rendered ineffective assistance in in failing: (1) to challenge the blood-type evidence; (2) to object to alleged prosecutorial misconduct; (3) to object to alleged hearsay evidence; and (4) to object to the jury instructions.  *See* Petition at PageID.5.  Petitioner's claims of ineffective assistance arise within the context of his other claims: the blood-type evidence in Issue VIII, *infra*; the alleged prosecutorial misconduct in Issue V, *infra*; and the alleged hearsay evidence and jury instructions in Issue VII, *infra*.  The Court will address the ineffective assistance of counsel claims with respect to each of those issues.

19

C.     Newly discovered evidence/third party culpability (Issue III)

Van Durmen contends that the state trial court violated his rights when it denied his

motion for a new trial.  This Michigan Court of Appeals addressed this claim as follows:

> Defendant next argues that the trial court improperly denied defendant's
> motion for a new trial because newly discovered evidence shows that the
> prosecution's key witnesses [*i.e.*, David Vail, Jerry Sisk and Edward Becker]
> committed perjury, which can be a basis for a new trial. *People v. Barbara*, 400
> Mich. 352, 363, 664 NW2d 174 (2003). We disagree. This Court reviews a trial
> court's denial of a motion for a new trial for an abuse of discretion.  *People v.
> Brown*, 279 Mich.App. 116, 144, 755 N.W.2d 664 (2008). A trial court abuses its
> discretion when its decision falls outside the range of principled outcomes. *People
> v. Babcock*, 469 Mich. 247, 269, 666 N.W.2d 231 (2003). To receive a new trial on
> the basis of newly discovered evidence, a defendant must show that "(1) the
> evidence itself, not merely its materiality, was newly discovered; (2) the newly
> discovered evidence was not cumulative; (3) the party could not, using reasonable
> diligence, have discovered and produced the evidence at trial; and (4) the new
> evidence makes a different result probable on retrial." *People v. Cress*, 468 Mich.
> 678, 692, 664 N.W.2d 174 (2003) (internal quotations omitted).
>
> However, the trial court determined that the letters from Vail to his attorney,
> Vail to defendant, Sisk to defendant, and Becker to defendant were suspect and
> unreliable. The court further determined that the jury had ample evidence to convict
> despite the letters such as testimony from other witnesses regarding defendant's
> tennis shoes, defendant lying about his whereabouts, and trying to pay someone for
> an alibi. Thus, because defendant's newly discovered evidence would not make a
> different result probable, the trial court did not abuse its discretion by denying
> defendant's motion for new trial.

*Vandurmen*, 2009 WL 2032044 at *2-3.

The extraordinary remedy of habeas corpus lies only for a violation of the

Constitution. 28 U.S.C. § 2254(a).  Here, Van Durmen's claim involves a matter of state law which

is not cognizable on federal habeas review.  Under Michigan law, "[a] trial court's ruling on a

motion for a new trial is reviewed for an abuse of discretion."  *People v. Mechura*, 205 Mich. App.

481, 483, 517 N.W.2d 797, 798 (1994).  "[A] state trial court's alleged abuse of discretion, without

more, is not a constitutional violation" subject to federal habeas review. *Stanford v. Parker*, 266

F.3d 442, 459 (6th Cir. 2001).  *See Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("[a] federal court

may not issue a writ on the basis of a perceived error of state law"); *Townsend v. Trierweiler*, No. 18-2273, 2019 WL 1958791 at *2 (6th Cir. April 25, 2019) (no reasonable jurist could disagree with the district court's conclusion that a petitioner's claim that the state trial court erred in denying his motion for a new trial based on newly discovered evidence is not cognizable on federal habeas review); *Sheffield v. Lack*, 862 F.2d 316, 1988 WL 121252 at *1 (6th Cir. Nov 15, 1988) (unpublished order) ("petitioner's claim that he was improperly denied a new trial based upon newly discovered evidence is not cognizable in habeas corpus").  Accordingly, this habeas claim is denied.

### D.     Denial of a fair trial and due process (Issue IV)

Next, Van Durmen contends that the trial court denied him a fair trial and due process by admitting improper hearsay evidence and by giving improper jury instructions.

### 1.      Improper evidence

The evidence at issue involves Edward Becker, an inmate at the Berrien County Jail who spoke with Van Durmen while both were being held at the jail.  Prior to the trial, Becker spoke with Van Durmen in the jail's medical room.  Trial Trans. IV (ECF No. 46-6, PageID.1929-1961).  Becker testified that Van Durmen said he killed Emma Jean McNulty.  *Id*. at PageID.1930.  Van Durmen told Becker that "he stabbed her in the side of the head with a knife and that's how he cut his hand."  *Id*.  In describing the attack, Van Durmen said that "[t]he bitch had a hard head."  *Id*. at PageID.1930-1931.  As to property taken from the McNulty residence, Van Durmen told Becker "that he still had some of the diamonds and gold hid."  *Id*. at PageID.1931.

After Becker testified at the preliminary hearing, "[Van Durmen] was looking at me saying this was a setup and he was very angry."  *Id*. at PageID.1948.  Becker also testified that

Van Durmen threatened to kill him after the preliminary examination.  *Id*. at PageID.1942, 1947.

At the trial, Becker testified that:

> Mr. VanDurmen told me in order to leave my family alone I had to write a letter to him saying I was lying. He was messing with my family at the time.  My brother was getting shotguns pulled on him.  He got run off the road on his motorcycle.

*Id*. at PageID.1943.

The prosecutor inquired as to the reasons why Becker wrote the letter stating that his previous testimony was a lie:

> Q. Had you ever been threatened by the Defendant?
>
> A. Yes, several times.
>
> Q.  Is that why you wrote the letter to him?
>
> A.  Yes. Because he – I don't know if he had it – he did it personally or not, but I know right after the pre-examination, that my brother and his girl friend were getting run off the road with shotguns[.]

*Id*. at PageID.1947.  Van Durmen's counsel objected to the statement as hearsay.  *Id*.  The trial judge admitted the statement because "it would seem that it would go to his state of mind as to why he wrote the letter."  *Id*.  The judge held that the letter was "not being admitted for the truth of the matter asserted" and that "the jury should not consider it for the truth of the matter asserted, but only to explain the state of mind as to why this person wrote the letter."  *Id*. at PageID.1948.

The Michigan Court of Appeals addressed Van Durmen's improper evidence claim as follows:

> Defendant objected to Becker's statement as hearsay at the time of admission; therefore, the issue is preserved.  *People v. Knox*, 469 Mich. 502, 508, 674 N.W.2d 366 (2004). This Court reviews a trial court's admission of evidence for an abuse of discretion. *People v. McDaniel*, 469 Mich. 409, 412, 670 N.W.2d 659 (2003). Defendant argues that the trial court statement by Edward Becker, an inmate at the Berrien County jail with defendant, was improperly admitted as hearsay. In his statement, Becker explained that he wrote an exculpatory letter after defendant's preliminary examination because of threats to his family. A declarant's out-of-court

statement relating to his or her then-existing state of mind is an exception to the hearsay rule, and if relevant, can be admitted. MRE 803(3); MRE 402; *See also People v. Fisher*, 449 Mich. 441, 449-450, 537 N.W.2d 577 (1995). Further, MRE 801(d)(1) provides in pertinent part:

> (d) Statements Which Are Not Hearsay. A statement is not hearsay if-
>
> (1) Prior Statement of Witnesses. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.... [Emphasis in original.]

> Because Becker's statement related to his state of mind for the reason he wrote the letter, and because the issue was relevant as to why he made a prior inconsistant [sic] statement, the trial court did not abuse its discretion by admitting the statement.

*Vandurmen*, 2009 WL 2032044 at *3.

To the extent that Van Durmen contends that the evidence should have been excluded under Michigan hearsay rules, his claim is not cognizable on habeas review. As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*.

While state-court evidentiary rulings "are usually not to be questioned in a federal habeas proceeding." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted), a narrow exception exists if the evidentiary hearing violates due process. As the Supreme Court explained,

> "[P]reventing and dealing with crime is much more the business of the States than it is of the Federal Government, and . . . we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally 'within the power of the State to regulate procedures under which its laws are carried out,' . . . and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Patterson v. New York*, 432 U.S. 197, 201-202, 97 S.Ct. 2319, 2322, 53 L.Ed.2d 281 (1977) (citations omitted).

*Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

Petitioner has not demonstrated that the admission of Becker's testimony violated his due process rights. The Michigan Court of Appeals found that the hearsay evidence was properly admitted under state law. There is nothing inherent in the admission of hearsay testimony that offends fundamental principles of justice. As the Sixth Circuit observed in addressing this issue,

> [t]he first and most conspicuous failing in [arguing that hearsay testimony violates due process] is the absence of a Supreme Court holding granting relief on [that] theory: that admission of allegedly unreliable hearsay testimony violates the Due Process Clause. That by itself makes it difficult to conclude that the state of appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

*Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) (quoting 28 U.S.C. § 2254(d)). Here, the state court held that Becker's testimony was not hearsay under MRE 801(d)(1). "Where, as here, a state court reasonably rejects a rule urged by the claimant but yet to be adopted by the Supreme Court, it does not unreasonably apply established federal law." *Id*. at 632 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). Accordingly, this claim for habeas relief is denied.

### 2.    Improper jury instructions

The Michigan Court of Appeals addressed this claim as follows:

> Next, defendant argues that he was denied a fair trial because the trial court gave jury instructions that made him look "foolish" because the instructions contradicted defendant's testimony by stating defendant said he was not guilty of

receiving and concealing stolen property. However, defendant did not object to or request any jury instructions before the jury deliberated; therefore, the issue is not preserved for review. *People v. Sabin (On Second Remand)*, 242 Mich.App. 656, 657, 620 N.W.2d 19 (2000); MCR 2.516(C). This Court reviews unpreserved issues regarding jury instructions for plain error affecting the defendant's substantial rights and will not reverse a conviction if the instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights. *People v. Gonzalez*, 256 Mich.App. 212, 225, 663 N.W.2d 499 (2003). Reversal is only warranted when the error resulted in the conviction of a defendant who is actually innocent or when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Carines*, *supra* at 774. To establish that a plain error affected substantial rights, there must be a showing of prejudice, *i.e.*, that the error affected the outcome of the lower court proceedings. *Grant*, *supra* at 549. In this case, the verdict did not involve any determination of defendant's guilt of receiving and concealing stolen property. Thus, the jury instructions did not affect the fairness, integrity, or public reputation of the trial, and defendant suffered no prejudice. Therefore, there was no plain error affecting defendant's substantial rights and defendant's right to a fair trial was not violated.

*Vandurmen*, 2009 WL 2032044 at *3.

A petitioner's claim that the trial court gave an improper jury instruction that violated state law is not cognizable on habeas review. Instead, a habeas petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977); *see also Estelle*, 502 U.S. at 75 (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"). "Jury instructions are reviewed as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury." *United States v. Poulsen*, 655 F.3d 492, 501 (6th Cir.2011).

Here, the Court gave the jury an instruction for receiving or concealing stolen property as a lesser included offense of armed robbery. Trial Trans. VI (ECF No. 46-9, PageID.2481-2483). In denying the MRJ, the state court explained that Van Durmen's objection to the jury instruction related to the trial judge's summary of his theory of the case. *See* MRJ Opinion and Order at PageID.2555. In this regard, the trial court gave the following instruction:

> [I]t is the Defendant's, Anthony VanDurmen's, claim that he did not commit the crimes charged and that he was not present then Emma Lou McNulty was murdered. Anthony Lee VanDurmen claims that David Vail and Jerry Sisk stated he committed this offense in order to avoid life maximum offenses and not be charged with first degree murder themselves. And he claims that the People have not proved him guilty beyond a reasonable doubt of first degree willful deliberate and prerne6itated murder or they have not proved him guilty beyond a reasonable doubt of first degree felony murder committed during the perpetration of an armed robbery, and that they have not proved him guilty of second degree murder beyond a reasonable doubt, or that they have not proved him guilty of armed robbery beyond a reasonable doubt, or receiving or concealing stolen property over the value of a hundred dollars beyond a reasonable doubt, or that they have not proved him guilty of any offense whatsoever.

Trial Trans. VI at PageID.2486.

Van Durmen appears to be arguing that the trial judge should not have given the instruction for a lesser included offense, because it would contradict his theory of the case and make him look foolish. Van Durmen has not articulated a federal due process claim. The trial judge instructed the jury at the outset of the case that armed robbery was the basis for the felony murder charge, *i.e.*,

> Count II reads as follows: That on or about 12/23 -December 23rd, 1986, at 1563 Country Club Drive, in Niles Township, Berrien County, Michigan, the Defendant, Anthony Lee VanDurmen, did, while in the perpetration or attempted perpetration of robbery, kill and murder one Emma Lou McNulty.

Trial Trans. I (ECF No. 46-3, PageID.1164). During the closing argument, the prosecutor argued that armed robbery was the underlying felony for the felony murder charge. Trial Trans. VI (ECF No. 46-8, PageID.2448). In addition, inclusion of the lesser included offense of receiving and concealing stolen property was consistent with defense counsel's closing argument that Van Durmen's accomplices killed the victim and set up Van Durmen as the "fall guy." *See* MRJ Opinion and Order at PageID.2557. Finally, as the Michigan Court of Appeals pointed out, the jury found that Van Durmen committed armed robbery and did not consider the lesser included offense. For all of these reasons, this habeas claim is denied.

### 3.        Ineffective assistance of counsel

In his MRJ, Van Durmen claimed that his trial counsel was ineffective for failing

to object to Becker's testimony and the jury instructions.  The state court addressed this claim in

the MRJ as follows:

> Lastly, Defendant claims ineffective assistance in trial counsel related to
> certain admitted testimony from witness, Edward Becker, regarding threatening
> behavior by Defendant, (Motion, 10/5/15, pp 18-21) and trial counsel's failure to
> object to the Court's giving of certain jury instructions about Defendant's theory of
> the case (Motion, 10/5/15, p 21). The Court finds no merit or factual bases to these
> claims of ineffective assistance of counsel.
>
> As to Mr. Becker's testimony, Defendant's trial counsel in fact objected to
> Mr. Becker's statements several times during direct and redirect examination by the
> prosecution. One objection was overruled, but the other two were sustained by the
> Court. (TT Vol IV, pp 892-893, 900-901). In addition, trial counsel had an
> opportunity to cross-examine Mr. Becker and challenge his testimony with respect
> to threatening behavior of Defendant, as well as obtain testimony beneficial to
> Defendant's case. (TT Vol IV, pp 894-899, 902-905). For example, trial counsel
> elicited testimony from Mr. Becker in pertinent part as follows:
>
>> Q: You then wrote in this letter, "Tony, this whole deal was a setup
>> from the beginning. The police said for me to find out as much
>> information as I could from, and if I had to, I was to lie."
>> A: That's what I said, sir.
>>                                  * * *
>> Q: Then you went on to say, "Tony, I can help you beat this case."
>> Correct?
>> A: Yes, I did.
>> Q: Then you went on to say, "And I will get your lawyer up here
>> and I will make an official statement to him."  Right?
>> A: Yes, I would.
>> Q: And then you said, "Tony, I know I was wrong what I did to you,
>> but I'm going to [f---] up the whole prosecutor's case now."
>> A: That's what I said.
>> Q: Here is a guy who's allegedly threatening you?
>> A: Yes.
>> Q: And you are writing this letter to him?
>> A: Yes.
>>                                  * * *
>> Q: . . . [Y]ou're testifying that what you said at the Preliminary
>> Examination, when I asked you questions, was the truth.
>> A: All of it was the truth.

Q: In fact, David Vail repeatedly said he was going to lie on Tony VanDurmen?
A: Yes.

\* \* \*

Q: The Defendant ever do anything to you?
A: He can't get to me.

\* \* \*

Q: Had Mr. VanDurmen made any threats to you to cause you to say that you were going to come forward and –
A: No.

\* \* \*

Q: So [Vail] indicated he was going to lie about other things, too, didn't he?
A: Yes.
Q: [Vail] said he was going to lie in whatever way possible to nail Mr. VanDurmen and get himself off?
A: Yes.
Q: He told you that?
A: Yes, he did.

(TT Vol IV, pp 897-904).

Further, as to the jury instructions regarding Defendant's theory of the case (TT Vol VII, p 1430-1431), the Court finds the instructions in this regard entirely appropriate and consistent with the evidence and theory of the case presented by the defense. (TT Vol VI, pp 1360-1378). In particular, the Court's instructions comport with trial counsel's closing arguments, stated in part:

In summary, I would like to tell you what I think happened and why I think it happened. I think that Jerry Sisk and David Vail planned this thing. I think it's substantiated by John Davis' testimony and that of Bennie Jasper's testimony. I think they went there and they committed the crime and they killed this lady and they got the property. And I think then they realized they had to have a fall guy, especially once they were getting into it as deep as they were getting into it. Who's the easiest fall guy? It's a person they know by the name of Tony VanDurmen. And what is their motive for blaming somebody else? Plain and simple, avoid the sentence which is going to cause you to die in prison. Avoid the fact that you may have to end up spending every last day of your life behind bars. So what do they do? They originally give statements and they put the blame on Tony. But they don't get all the facts straight the first time around. They are talking about where this purse was, for example. So finally they get their facts straight when they come in here and testify to you in the last week, and that's to avoid their sentence. You heard the deal they got. It's a fantastic deal, considering what they were

28

originally facing. So their motive of putting the blame on Tony was plain and simple. To avoid a long prison term.

(TT Vol VI, pp 1377-1378).

Again, defense counsel is not required to make meritless objections. "[T]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fike*, 228 MichApp 178, 182; 577 NW2d 903 (1998). In this instance, there is simply no record supporting ineffective assistance of counsel in the examination of Mr. Becker or in trial counsel not objecting to an appropriate jury instruction given by the Court. Defendant's claims of ineffective assistance of counsel as set forth in Defendant's instant motion fail. Similarly, any claims of Defendant that his various appellate attorneys were ineffective in failing to raise claims of ineffective assistance of counsel on appeal also fail. Defendant's motion for relief from judgment is denied on the claims of ineffective assistance of counsel.

MRJ Opinion and Order at PageID.2555-2557.

For the reasons discussed, there was no error with either the admission of Becker's testimony or the jury instruction regarding the lesser included offense, and no reason for counsel to object to either.  Counsel's failure to raise a meritless issue does not constitute ineffective assistance.  *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'"). Accordingly, this habeas claim is denied.

### E.      Prosecutorial misconduct (Issue V)

The Michigan Court of Appeals addressed this claim as follows:

Defendant next argues he was denied a fair and impartial trial because of prosecutorial misconduct. Defendant did not object to the prosecutor's comments or introduction of evidence at the time of trial, therefore the error is not preserved. *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994). Because defendant did not preserve this issue, it is reviewed for plain error affecting his substantial rights. *People v. Thomas*, 260 Mich.App. 450, 453-454, 678 N.W.2d 631 (2004). Further, a prosecutor's good-faith effort to admit evidence does not constitute misconduct. *People v. Dobek*, 274 Mich.App. 58, 70, 732 N.W.2d 546 (2007). In this case, defendant did not show any evidence that he was innocent, or that the fairness, integrity, or public reputation was seriously affected by the prosecutor's comments and introduction of evidence. The prosecutor's actions

> complained of either comported with the evidence, stated what the evidence would show, was introduced by the prosecutor's good faith effort, or was cured by the trial court's instructions to the jury. Thus, the prosecutor's conduct did not amount to misconduct, and defendant received a fair and impartial trial.

*Vandurmen*, 2009 WL 2032044 at *4.

In order for Van Durmen to be entitled to habeas relief on the basis of prosecutorial misconduct, he must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In the context of closing arguments, prosecutors "must be given leeway to argue reasonable inferences from the evidence." *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id*. at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle*

*v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).   In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (internal quotation omitted).

In his MRJ, Van Durmen raised the issue of prosecutorial misconduct as well as a related claim of ineffective assistance of counsel.   The trial court addressed his claims:

> Next, Defendant asserts ineffective assistance of trial counsel by not objecting to the prosecutor's *voir dire* of the juror panel, the prosecutor's closing arguments, and/or the alleged "coaching" of certain witnesses. (Motion, 10/5/15, pp 11-17). Notably, Defendant essentially reasserts prosecutorial misconduct claims couched as one of ineffective assistance of counsel for not objecting to the alleged prosecutorial misconduct. However, as Defendant even acknowledges (Motion, 10/5/15, p 17), the Court of Appeals already held that there was no prosecutorial misconduct from which reversal or a new trial was warranted. *See*, *VanDurmen*, *supra* at *4-5 (MichApp). In addition, by the instant motion, Defendant has failed to establish any new or different prosecutorial misconduct not already addressed in this Court's or the appellate courts' prior rulings.

> Moreover, at trial the Court (by Judge Burkholz) gave several instructions to the jury regarding consideration of evidence, including specifically and properly instructing the jury to not consider the arguments and statements of the lawyers as evidence, in pertinent part as follows:

>> Any statements or arguments of the lawyers are not evidence, but they are only intended to assist you in understanding the evidence and the theory of each party. The questions which the lawyers asked the witnesses were not themselves evidence. It was the answers of the witnesses which provided the evidence. And you should disregard anything said by a lawyer which is not supported by the evidence or by your own general knowledge and experience.

> (TT Vol VII, 1403). Alleged prosecutorial misconduct will not warrant reversal "where a curative instruction could have alleviated any prejudicial effect." *People v Ackerman*, 257 MichApp 434,449; 669 NW2d 818 (2003).

> Given that there is no identifiable prosecutorial misconduct established, the fact that Defendant's trial counsel did not object to the prosecutor's conduct cannot and does not rise to the level of ineffective assistance of counsel. That is, "[f]ailing

31

to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 MichApp 192,201; 793 NW2d 120 (2010), citing *People v. Snider*, 239 MichApp. 393,425; 608 NW2d 502 (2000).

MRJ Opinion and Order at PageID.2554-2555.

Here, the trial court gave the jury a curative instruction which addressed statements by the trial lawyers.  "Ordinarily, a court should not overturn a criminal conviction on the basis of a prosecutor's comments alone, especially where the district court has given the jury an instruction that may cure the error." *United States v. Carter*, 236 F.3d 777, 787 (6th Cir. 2001).  "[T]he court must assume that the jurors were diligent in following the precise instructions given to them." *United States v. Tosh*, 330 F.3d 836, 842 (6th Cir. 2003).  *See Gajda v. Wolfenbarger*, 483 Fed. Appx. 205, 206-07 (6th Cir. 2012) ("the court's subsequent instruction vitiated any resulting prejudice, since we presume that jurors follow the instructions they receive").  The curative instruction was sufficient to address comments made by the prosecutor's during the trial.

Finally, because there was no error, counsel's failure to raise a meritless claim of prosecutorial misconduct on appeal does not constitute ineffective assistance.  *See Sutton*, 645 F.3d at 755.  Accordingly, this habeas claim is denied.

### F.        Insufficient evidence (Issue VI)

### 1.        Legal standard

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. "A defendant claiming insufficiency of the evidence bears a heavy burden." *United States v. Johnson*, 71 F.3d 539, 542 (6th Cir. 1995). Sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In evaluating a sufficiency of the evidence claim, the court views both direct evidence and circumstantial evidence in the light most favorable to the prosecution, drawing all available inferences and resolving all issues of credibility in favor of the factfinder's verdict.  *United States v. Rayborn*, 495 F.3d 328, 337-38 (6th Cir. 2007). The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution.  *Wright v. West*, 505 U.S. 277, 296-97 (1992).

Here, the Michigan Court of Appeals utilized the correct standard of review:

> "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v. Wolfe*, 440 Mich. 508, 515, 489 N.W.2d 748 (1992), amended 441 Mich. 1201, 489 N.W.2d 748 (1992). Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime. *People v. Truong (After Remand)*, 218 Mich.App. 325, 337, 553 N.W.2d 692 (1996). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v. Nowack*, 462 Mich. 392, 400, 614 N.W.2d 78 (2000).

*Vandurmen*, 2009 WL 2032044 at *4.

### 2.      First-degree murder

The Michigan Court of Appeals addressed Van Durmen's claim with respect to the first-degree murder conviction as follows:

> Defendant argues that there was insufficient evidence to prove premeditation and deliberation, thus defendant's conviction for first-degree murder cannot stand. . . .
>
> As to defendant's first claim, premeditation and deliberation require sufficient time to permit a defendant to reconsider his actions. *People v. Abraham*, 234 Mich.App. 640, 656, 599 N.W.2d 736 (1999). Although the length of time needed is incapable of precise determination, it need only be long enough "to allow the defendant to take a second look." *People v. Daniels*, 192 Mich.App. 658, 665, 482 N.W.2d 176 (1991); *People v. Schollaert*, 194 Mich.App. 158, 170, 486

N.W.2d 312 (1992). Premeditation may be inferred from all the facts and circumstances surrounding the incident, including the parties' prior relationship, the defendant's actions before and after the crime, and the circumstances of the killing. *People v. Haywood*, 209 Mich.App. 217, 229, 530 N.W.2d 497 (1995). Finally, minimal circumstantial evidence is sufficient to prove an actor's state of mind. *People v. Ortiz*, 249 Mich.App. 297, 301, 642 N.W.2d 417 (2001).

In this case, there was sufficient evidence to support the contention that defendant had an opportunity to reconsider his actions before killing Mrs. McNulty based on his threats, repeated blows to her head with a patio stone, continued pursuit to resume attacking her as she locked herself in a bathroom and climbed out the window, and infliction of multiple stab wounds as she tried to escape. He also attempted to destroy the evidence by burning his clothing and hiding the items he stole. Thus, there was sufficient evidence to show that defendant premeditated and deliberated Mrs. McNulty's murder.

*Vandurmen*, 2009 WL 2032044 at *4-5.

Pursuant to M.C.L. § 750.316(1)(a), "a person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life without eligibility for parole: . . . (a) Murder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." The Michigan Court of Appeals set out the definitions of "premeditation" and "deliberation" and the evidence which supported those elements of the crime. In this regard, respondent summarized the chronology of events:

[Van Durmen] repeatedly struck McNulty in the head with a patio stone and then sent one of his accomplices to the kitchen for a knife. (7/8/87 Trial Tr. at 205, 401-09.) Once he had the knife, Van Durmen had to carve his way through the bathroom door to get to McNulty. (*Id*. at 410-11.) He pursued her outside and stabbed her multiple times. (*Id*. at 412.)

Respondent's Answer (ECF No. 45, PageID.826).[2]

The evidence presented at trial was sufficient for a rational jury to infer, beyond a reasonable doubt, that Van Durmen committed first degree premeditated murder as he pursued the victim both inside and outside of the house. Finally, to the extent that Van Durmen disagrees with

---

[2] Respondent cites Trial Trans. II (ECF No. 46-4, PageID.1260, 1456-1467).

the state appellate court's construction of the statutory terms of "premeditation" and "deliberation," he cannot seek federal habeas relief on that basis. *See Pulley*, 465 U.S. at 41. *See also, Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (the United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings). Accordingly, this habeas claim is denied.

### 3. Armed robbery

Van Durmen also contested the sufficiency of the evidence to support armed robbery. The Michigan Court of Appeals addressed this claim as follows:

> Defendant further argues there was also insufficient evidence to prove that he committed armed robbery . . . .
>
> Defendant's theory to explain why there was insufficient evidence to support his conviction for armed robbery was that weapons were used against Mrs. McNulty to get her to reveal the location of the property and later to kill her, but not to actually separate the property from her. However, an assault that occurred before the taking of the property can be used for the basis of an armed robbery conviction. *People v. Scruggs*, 256 Mich.App. 303, 310, 662 N.W.2d 849 (2003). Thus, the evidence sufficiently supported defendant's conviction for armed robbery.

*Vandurmen*, 2009 WL 2032044 at *5.

As discussed, the armed robbery conviction was vacated in 2004. This Court will review the sufficiency of the evidence with respect to armed robbery as the predicate felony for the felony murder conviction. *See* M.C.L. § 750.316(b) (first-degree murder includes "Murder committed in the perpetration of, or attempt to perpetrate . . . robbery"). In finding that the evidence established the elements of armed robbery, the state appellate court cited *Scruggs*, 256 Mich. App. at 310, which held that "[t]o prove armed robbery under Michigan law, the evidence must establish that the assault against the victim occurred before, or contemporaneous with, the

taking of the property."  The record reflects that Van Durmen attacked the victim before the taking of the property as a way to coerce her into telling him the location of the "money":

> Q.  And what, if anything, did the victim say after -- Mrs. McNulty, after she was hit in the head with this brick?
>
> A.  He told her that he was not going to hurt her anymore and all he wanted to know was where the money was.
>
> Q.  What did she say?
>
> A.  She pointed to a coffee table or round table, whatever you want to call it, that was in the other corner of the bedroom and said it was under the table. And she said, "Just don't hurt me. You can take anything."

Trial Trans. II at PageID.1457.  After the victim pointed to the table, Van Durmen's accomplices "flipped the top off the table" and found bags of silver coins and "some gold Kruggerands [sic] from Africa."  *Id*. at PageID.1459.

The evidence presented at trial was sufficient for a rational jury to infer, beyond a reasonable doubt, that Van Durmen committed armed robbery.  Accordingly, this habeas claim is denied.

### 4.	Witness credibility

In disputing the sufficiency of the evidence, Van Durmen challenged the credibility of the witnesses who testified against him.  The Michigan Court of Appeals addressed this claim as follows:

> As to defendant's challenges to the credibility of the witnesses who testified against him, he was able to cross-examine all of the witnesses and the jury was able to determine the credibility of the witnesses. "It is the province of the jury to determine questions of fact and assess the credibility of witnesses." *People v. Lemmon*, 456 Mich. 625, 637, 576 N.W.2d 129 (1998). Further, this Court affords deference to the jury's "special opportunity to . . . assess the credibility of the witnesses." *Unger*, *supra* at 228-229. Because there was sufficient evidence to support defendant's convictions, his convictions and sentence should be affirmed.

*Vandurmen*, 2009 WL 2032044 at *5.

In evaluating a claim of insufficient evidence, this Court does not address the credibility of the witnesses.  As discussed, this Court views the evidence in the light "most favorable to the prosecution." *Jackson*, 443 U.S. at 319.  "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id*. at 326.  Accordingly, this habeas claim is denied.

### G.    The prosecution presented materially misleading, inaccurate or false information in opposing Van Durmen's motion for a new trial and evidentiary hearing in violation of his constitutional rights (Issue VII)

The Michigan Court of Appeals addressed this claim as follows:

> Defendant next argues that the trial court erred when it denied defendant's motion for a new trial when the prosecutor failed to introduce that the autopsy report mentioned wounds to Mrs. McNulty's abdomen. We disagree. The autopsy report did not have any consequential effect on the trial court's denial of defendant's motion for new trial. First, the superficial abdominal wounds had no effect on the trial court's decision because Jerry Spence's letter claiming Sisk admitted that he stabbed Mrs. McNulty twice in the chest was unreliable. Secondly, the abdominal wounds described in the autopsy report do not contradict the trial court's decision. Therefore, the trial court did not abuse its discretion by denying defendant's motion for a new trial.

*Vandurmen*, 2009 WL 2032044 at *5.

The gist of Van Durmen's claim is that the trial court erred in granting him a new trial based because the prosecutor failed to introduce a portion of the autopsy report which referred to the victim's superficial abdominal wounds.  As discussed in § V.C., *supra*, a Michigan trial court's ruling on a motion for a new trial is reviewed for an abuse of discretion, *Mechura*, 205 Mich. App. at 483, and a state trial court's alleged abuse of discretion is not a constitutional violation subject to federal habeas review, *Stanford*, 266 F.3d at 459.   Here, Van Durmen's contention that the state trial court erred in denying a motion for a new trial to present additional

evidence in the victim's autopsy report raises a question of state law which is not cognizable on federal habeas review.  *See Townsend*, 2019 WL 1958791 at *2. Accordingly, this habeas claim is denied.

### H.    The trial court used erroneous evidence to deny petitioner's motion for a new trial (Issue VIII)

The Michigan Court of Appeals addressed this claim as follows:

> Defendant's final argument is that the trial court erred when it relied on evidence where it misstated Mrs. McNulty's blood type, considered various threats by defendant, and considered certain jewelry from the McNulty's home in denying defendant's motion for a new trial. We disagree. Defendant did not object on the basis of these claims during trial, therefore the issue is not preserved. *People v. McDaniel, supra*. This Court reviews an unpreserved non-constitutional error for plain error affecting substantial rights. *Carines, supra*. An unpreserved non-constitutional error is presumed harmless and does not warrant reversal unless it is more probable than not that the error was outcome determinative. MCL 769.26; *Lukity, supra*.

*Vandurmen*, 2009 WL 2032044 at *5-6. The Court will address the three habeas claims related to the blood type, threats, and jewelry.

### 1.    Blood type

The Michigan Court of Appeals rejected Van Durmen's claim related to the victim's blood type:

> The trial court found "ample evidence at the trial that [d]efendant was guilty." Thus, the trial court did not rely entirely on the misstated difference between Mrs. McNulty's blood type and defendant's blood type. As such, the error was harmless.

*Id.* at *6.  In his MRJ, Van Durmen alleged that trial counsel was ineffective for failing to investigate "DNA/Blood Evidence."  The trial court addressed this claim at length:

> First, Defendant essentially argues that his trial attorney, James Jesse, did not adequately pursue independent DNA testing of the blood evidence which was ultimately presented at trial. Ineffective assistance of counsel may be established for a counsel's failure to make an adequate investigation, if the defendant can demonstrate that the inaction undermines the confidence in the trial's outcome.

*People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). In this case, Defendant has not made such a showing.  More specifically, Defendant has failed to overcome the presumption that his trial attorney's inaction in this regard was sound trial strategy. Looking at the record, including that which Defendant even highlights in his motion, there is significant eye witness and other evidence identifying Defendant in the victim's house and killing the victim, Emma Lou McNulty. For example, it is undisputed that a co-defendant and accomplice, David Vail, testified, subject to cross-examination, at trial that Defendant was the one who brutally attacked and killed the victim. *See*, *VanDurmen*, supra at *1 (MichApp). Also, Defendant concedes that Mr. Vail and the other co-defendant, Jerry Sisk, both testified about the deep cuts Defendant received to his hands while in or trying to get into the victim's house, as well as several other witnesses who testified about seeing the deep cuts to Defendant's fingers. (Motion, 10/5/15, pp 6-7).

There was testimony evidence from Officer James Ellis and photographs admitted as evidence describing or depicting the McNulty residence after Mrs. McNulty's bloody, mangled body was discovered outside near the residence by an I&M meter worker. Officer Ellis testified about there being a smashed glass door leading to the master bedroom of the McNulty residence, numerous items in the residence being damaged or in disarray, including damaged wall and door and pieces of patio block on or near the bed, as well as blood throughout the master bedroom and bathroom where most of the damage was observed. (TT Vol I, pp 145-161).

All the witnesses who testified were subject to cross-examination at trial. For instance, when cross-examining Officer Ellis, Defendant's trial counsel challenged him on the lack of analysis he had performed on the sheet stains he thought was from blood, and other aspects of his investigation. (TT Vol I, pp 167-175). There was also the consideration of the brutality of the attack against the victim; the fact there was evidence of a motive presented against Defendant [FN 3]; Defendant having been at the McNulty residence before and met the McNultys [FN 4]; and as mentioned above, the amount of blood at the scene, particularly Type A which was the type of blood for both the victim, Mr. Sisk and Defendant (TT Vol II, pp 360-368). At the same time, trial counsel challenged certain blood evidence in setting forth the defense's case, including the fact that some of the physical evidence, such as a jewelry box had a drop of type O blood on it, which was the same blood type as Mr. Vail, not Defendant. (TT Vol II, pp 362-364).

Therefore, the Court finds that it is within the realm of reasonable professional decisions, that trial counsel had a realistic concern of potentially adding to the incriminating evidence, with additional DNA evidence that did not otherwise exist, and focusing the defense strategy instead on challenging the credibility of Mr. Vail and/or Mr. Sisk, the co-defendants, as the killers who then set up Defendant to take blame. Thus, given the strength of the other evidence and circumstances, it appears improbable that the additional DNA testing would have created a different result at trial. Defendant has merely presented speculation and

second-guessing of his attorney's representation now that he has the hindsight of the jury's verdict. That is not sufficient to establish ineffective assistance of counsel under *Strickland*, *supra*.

[FN 3 Mrs. McNulty's adult son owed Defendant money ($120) for marijuana, and Defendant had made prior threats observed by the McNultys to get his money "some way or another." (TT Vol II, p 276); *see also VanDurmen*, *supra* at *1 (MichApp).]

[FN 4 Mr . McNulty testified that Defendant had been to their house prior to the murder, he had talked to Defendant on the phone a number of times, and the [sic] Mrs. McNulty had talked to her son about Defendant. (IT Vol II, pp 277-280).]

MRJ Opinion and Order at PageID.2553-2554.

The state court reached the appropriate result. Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. For example, counsel has a duty to investigate all witnesses who may have information concerning his client's guilt or innocence. *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). Here, the state court properly determined: that under the facts of this case, and given the existing evidence, Van Durmen's trial counsel made reasonable professional decisions with respect to the blood and DNA evidence; and, that counsel had a realistic concern that he could potentially add to the incriminating evidence against his client by investigating additional DNA evidence that did not otherwise exist. This Court agrees that given the strength of the other evidence, it appears improbable that the additional DNA testing would have created a different result at trial. Accordingly, this claim for habeas relief is denied.

### 2.    Van Durmen's threats

Van Durmen complains about evidence at the trial that he threatened people. The only "threat" addressed by the state courts on appeal involved threats Van Durmen made to the Niles Township Police Chief. The Michigan Court of Appeals rejected this claim:

> The trial court sustained defense counsel's objections to a witness's testimony regarding threats to the Niles Township Police Chief on relevancy grounds, struck the statement, and instructed the jury not to regard the testimony. Because jurors are presumed to have followed the trial court's instructions, the error was harmless. *People v. Hana*, 447 Mich. 325, 351, 524 N.W.2d 682 (1994). In addition, the court and the parties agreed that the substance of threats would not be mentioned if they would refer to going back to prison or to defendant's prior convictions. Thus, the admission of the witness's testimony even though defendant could not cross examine the statement because it would open the door to the fact he had previously been in prison did not amount to plain error affecting defendant's substantial rights.

*Vandurmen*, 2009 WL 2032044 at *6.

The matter at issue appears to be Trial Trans. IV (ECF No. 46-6, PageID.1774-1775). Page 719, PageID.1774. Dixie Alcala, Van Durmen's sister, testified that in January 1987, she told Niles Township Police Chief Street that Van Durmen told her to "Remember Chief Street's name, John Street." *Id*. at PageID.1774. When asked "why," Ms. Alcala stated "He [Van Durmen] said because he [Chief Street] took his baby from him." *Id*. Van Durmen's counsel objected, and the trial judge stated, "I will tell the jury to disregard the question and the answer, unless there is some relevancy shown . . ." *Id*. Van Durmen has failed to demonstrate a constitutional error: the record reflects that his sister made a statement which suggested a vague threat to Chief Street; defense counsel objected; and the trial judge sustained the objection. Accordingly, this habeas claim is denied.

### 3. The victim's jewelry

The Michigan Court of Appeals rejected Van Durmen's claim that the jewels introduced at trial were not from the victim's home:

> Finally, defendant argues that the jewels introduced at trial, found in his possession or in places he hid them, were not sufficiently proven to have come from the McNultys' home. MRE 901(a) states:

> > The requirement of authenticity or identification as a condition precedent to admissibility is satisfied by evidence sufficient to

41

support a finding that the matter in question is what its proponent claims.

In addition, where the witnesses identify items as being identical or similar to items involved in the crime, the condition is satisfied. *People v. Gunter*, 76 Mich.App. 483, 493-494, 257 N.W.2d 133 (1977). In this case, there were witnesses who identified the jewels sufficiently, thus the trial court's evidentiary rulings must be affirmed.

*Vandurmen*, 2009 WL 2032044 at *9.

At trial, witnesses identified some of the jewels which Van Durmen had in his possession. The jewels were stored in a tube in a toy car. Trial Trans. IV at PageID.1775-1776. Ms. Alcala testified that the car was in the house "when we moved in, when I was staying with my brother." *Id*. at PageID.1776. On March 2, 1987, Chief Street came to the house and asked Alcala if she had a toy car like that. *Id*. She gave the car to Chief Street, who used a screwdriver to open the car. *Id*. When he opened it up, "a vial of diamonds and stuff" came out. *Id*. Ms. Alcala identified People's Proposed Exhibit 51 as the vial (also referred to as the container or tube) that was inside of the car. *Id*. at PageID.1776-1777.

At trial, Thomas McNulty testified that some of the diamonds in the tube were about the size of diamonds that were in his wife's ring and he remembered seeing an opal as well. Trial Trans. II (ECF No. 46-4, PageID.1325). The victim's daughter, Elizabeth Dietz, identified a number of gems in the tube. Trial Trans. III (ECF No. 46-5, PageID.1632). Dietz identified "the channel cut diamonds, which are the long cut diamonds" which "were in a ring with a fairly good sized square emerald." *Id*. On cross-examination Dietz testified that although she could not say with 100% certainty that the gems came from her mother's house, she testified the gems "resemble the ones that were in her rings." *Id*. Dietz also recognized a purple stone that was about the same size, shape, and color as a stone from one of her mother's rings. *Id*. at PageID.1647. Dietz also recognized a large blue stone which had been in a gold mounting which she reported missing to

42

the police. *Id*. at PageID.1648. Dietz also identified diamonds in the tube that were similar in size and quality of diamonds in missing jewelry (two ½ carat diamonds from her grandmother's earrings and a "perfect" one carat diamond from her mother's wedding band). *Id*. at PageID.1648-1649). In addition, a jade ring was missing after the murder and a similar oval stone was in the tube. *Id*. at PageID.1649. Dietz also identified some oblong cut diamonds from another missing ring. *Id*. at PageID.1650. Based on this testimony, the witnesses identified a number of jewels hidden in the toy car which were similar to jewels taken from the crime scene. Accordingly, this habeas claim will be denied.

## VI.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if the petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *See Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Van Durmen's claims under the *Slack* standard. To warrant a grant of the certificate under *Slack*, 529 U.S. at 484, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the

Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id*.

Here, the Court finds that reasonable jurists could not conclude that this Court's dismissal of Van Durmen's claims was debatable or wrong. Therefore, the Court will deny Van Durmen a certificate of appealability.  Finally, although Van Durmen has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue he might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### VII.    Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:  March 28, 2023                              /s/ Ray Kent
                                                    RAY KENT
                                                    United States Magistrate Judge